# EXHIBIT A

## PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MODE ELEVEN BANCORP, | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case No. 25-20240 |
| Debtor in Possession. | ) | |

**ORDER (I) APPROVING THE BIDDING PROCEDURES; (II) APPROVING BID PROTECTIONS; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND RELATED NOTICES; (IV) SCHEDULING THE BID DEADLINE, THE AUCTION AND SALE HEARING; (V) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (VI) GRANTING RELATED RELIEF**

Upon the motion of Mode Eleven Bancorp in this bankruptcy case (the "Debtor") for the entry of an order (this "Order"): (i) approving the bidding procedures for the sale of substantially all of the Debtor's assets (the "Sale") attached hereto as Exhibit 1 (the "Bidding Procedures"),[1] (ii) approving certain Bid Protections as described herein in the event that a Stalking Horse Bidder is designated by the Debtor (the "Bid Protections"), (iii) establishing procedures for assumption and assignment of certain executory contracts and related notices, (iv) scheduling the bid deadline, auction, if any, and sale hearing, (v) approving the form and manner of notice thereof, and (vi) granting related relief; all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion or Bidding Procedures, as applicable.

proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion, having reviewed any objections filed in connection therewith (the "Objections"), and having heard the statements in respect of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS:[2]**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion, the Bidding Procedures, the

Assumption and Assignment Procedures, and the relief sought in the Motion has been given

under the circumstances, and no other or further notice is required except as set forth herein.

A reasonable opportunity to object or be heard regarding the relief provided herein has

been afforded to parties in interest.

D.      The basis for the relief requested in the Motion are: (i) sections 105, 363 and

365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code");

(ii) Bankruptcy Rules 2002(a)(2), and 6004, 6006; and (iii) Rules 2002-1 and 9013-1 of the

Court's Local Bankruptcy Rules (the "Local Rules").

E.      The Debtor has articulated good and sufficient reasons for this Court to:

(i) approve the Bidding Procedures; (ii) approve the Bid Protections; (iii) approve the

Assumption and Assignment Procedures; (iv) schedule the Bid Deadline, the Auction and

approve the manner of notice of the Auction; and (v) schedule the Sale Hearing and approve

the manner of notice of the Sale Hearing.

F.      The Bidding Procedures are fair, reasonable, appropriate under the

circumstances, and designed to maximize value for the benefit of the Debtor's estate. The

Debtor has demonstrated and proven to the satisfaction of this Court that the Bidding

Procedures are reasonable and appropriate. The Bidding Procedures balance the Debtor's

interests in emerging efficiently from this chapter 11 case while preserving the opportunity

to attract value-maximizing proposals beneficial to the Debtor's estate, its creditors, and other parties in interest.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as provided herein.

2.      All Objections to the relief requested in the Motion that have not been withdrawn, waived, resolved by modifications set forth herein, or settled as announced to the Court at the hearing on the Motion, are overruled, provided however that, all objections that address the proposed sale of the estate's assets and/or the proposed assumption and/or assignment of any contracts or leases in connection with such sale are reserved and preserved for the Sale Hearing.

## IMPORTANT DATES AND DEADLINES

3.      ***Bid Deadline***. The deadline by which all Bids for the Assets must be ***actually received*** by the parties specified in the Bidding Procedures is **4:00 p.m. (prevailing Mountain Time), on July 25, 2025** (the "Bid Deadline").

4.      ***Auction***. **July 28, 2025 at 10:00 a.m. (prevailing Pacific Time)**, is the date and time of the Auction, if one is needed. Such Auction will be held at the law offices of Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, California 90067, or at such later time on such day or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be permitted to participate at the Auction. The Debtor may conduct the Auction by telephone or videoconference.

5.      ***Sale Hearing***. A hearing to consider approval of the Sale and the sale to the

Successful Bidder or Backup Bidder (the "<u>Sale Hearing</u>") will commence on **August 4, 2025** at a time to be determined by the Court, and otherwise in accordance with any scheduling order entered by the Court. Any party wishing to object to approval of the Sale and the sale to the Successful Bidder or Backup Bidder or to the conduct of the Auction (a "<u>Sale Objection</u>") shall, by no later than **July 31, 2025 at 4:00 pm (prevailing Mountain Time)**, file and serve its Sale Objection upon all parties registered for CM/ECF service.

6.     A party's failure to timely file or make an objection shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with any Successful Bidder (or any Backup Bidder, if applicable) pursuant to the applicable Agreement, and shall be deemed to constitute any such party's consent to (a) entry of the Sale Order; (b) the consummation of the Sale and all transactions related thereto, including, without limitation, assumption and assignment of any Potentially Assumed Contract; and (c) the transfer of the Assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the Agreement.

## <u>AUCTION, BIDDING PROCEDURES, BID PROTECTIONS, AND RELATED RELIEF</u>

7.     The Bidding Procedures, in the form attached hereto as **<u>Exhibit 1</u>**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. All Bids must conform to the terms and conditions described in the Bidding Procedures. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures, including by

modifying the Bidding Procedures in its business judgment in any manner that is not inconsistent with applicable law and will best promote the goals of the Bidding Procedures, including by: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; (v) requiring prospective bidders provide additional information regarding their qualifications to acquire the Assets through a Sale as a condition to designating any such bidder as a Qualified Bidder, Stalking Horse Bidder, Successful Bidder, or Backup Bidder; and (vi) rejecting any or all Bids.

8.      The Debtor, in its reasonable business judgment, may agree that a prospective purchaser shall be afforded stalking horse status and protections (the "Stalking Horse Bidder" and any such bid a "Stalking Horse Bid"), including a break-up fee and expense reimbursement for reasonable expenses in an amount not to exceed in the aggregate 3% of the proposed Purchase Price under such Stalking Horse Bidder's Purchase Agreement (the "Bid Protections").

9.      Except as otherwise set forth herein, the Debtor's designation of a bidder as a Stalking Horse Bidder in accordance with the Bidding Procedures may occur without further order of the Bankruptcy Court. In the event the Debtor designates a Stalking Horse Bidder at least two business days prior to the Auction, then within two business days after entry into a Stalking Horse Agreement, the Debtor shall file a notice which will provide information about the Stalking Horse Bidder and the Stalking Horse Agreement (the "Stalking Horse Notice").

10.     If the Debtor receives two or more Qualified Bids (including any Stalking Horse Bid), the Debtor may conduct the Auction to determine the applicable bidder or bidders whose Bids constitute the highest and best offer for all or part of the Assets (each a "Successful Bidder" and each such bid a "Successful Bid"). The Debtor and its professionals shall direct and preside over the Auction in accordance with the Bidding Procedures and this Order.

11.     Any Stalking Horse Bidder, if one is designated in accordance with the Bidding Procedures, is a Qualified Bidder, and a Stalking Horse Bid, if any, is a Qualified Bid. If a Stalking Horse Bidder is designated in accordance with these Bidding Procedures each subsequent Bid must propose a purchase price greater than the sum of (i) the value of the Stalking Horse Agreement, as determined by the Debtor; (ii) the Bid Protections, and (iii) not less than $100,000 or by such other amount as the Debtor, in its sole discretion, shall announce before or during the auction (the "Overbid Increment"). During the Auction, subsequent Bids shall be greater than the previous Bid by the amount of the Overbid Increment which, for the avoidance of doubt, may be modified during the Auction by the Debtor in its sole discretion. The Debtor shall have the exclusive right to value any Bid or any Overbid Increment that includes Non-Cash Consideration.

12.     At the Auction, the Debtor may: (a) select, in its business judgment, pursuant to the Bidding Procedures, the highest or otherwise best Bid and the Successful Bidder or Backup Bidder; and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtor's business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the

Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of the estate, affected stakeholders, or other parties in interest.

13.     Up to two business days following the entry of this Order, in accordance with Bankruptcy Rule 2002(a) and (c), the Debtor (or its agent) shall serve the auction and sale notice, substantially in the form attached hereto as **Exhibit 2**, by first-class mail, postage prepaid, upon (a) all parties on the Debtor's creditor matrix; (b) the Office of the United States Trustee for the District of Wyoming; (c) counsel to any official committee appointed in these cases; (d) any entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Assets, (e) known counterparties to any Potentially Assumed Contract that could potentially be assumed and assigned to a Successful Bidder and (f) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

14.     The Assumption and Assignment Notice attached hereto as **Exhibit 3** is approved.

15.     No later than two (2) business days following the entry of the Bidding Procedures Order, the Debtor shall file with this Court and serve on each non-Debtor Counterparty to the Potentially Assumed Contracts a notice (the "Assumption and Assignment Notice"), which shall (i) identify the Potentially Assumed Contracts; (ii) list the Debtor's good faith calculation of Cure Costs with respect to each Potentially Assumed Contract; (iii) expressly state that assumption or assignment of a Potentially Assumed Contract is not guaranteed and is subject to the agreement of the Successful Bidder and

Court approval; and (iv) prominently display the deadline to file objections to the assumption, assignment, or sale of the Potentially Assumed Contracts. In the event that the Debtor identifies Counterparties that were not served with the Assumption and Assignment Notice, the Debtor may subsequently serve such Counterparty with an additional Assumption and Assignment Notice (each a "Supplemental Assumption and Assignment Notice"), and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file an objection with respect to such additional Counterparty shall be 4:00 p.m. (prevailing Mountain Time) on the date that is 14 days following service of the Supplemental Assumption and Assignment Notice.

16.      Objections, if any, to either the Cure Costs or the assumption or assignment of the Potentially Assumed Contracts to the Successful Bidder or adequate assurance of future performance (each a "Contract Objection") must be filed on or before July 31, 2025 at 4:00 pm (prevailing Mountain Time).  Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and electronically served upon all parties registered for CM/ECF service in this case so as to be actually be received no later than above-referenced objection deadline.

17.      If the parties are unable to consensually resolve a Contract Objection prior to the commencement of the Sale Hearing, the resolution of issues raised by the Contract Objection will be determined at the Sale Hearing or, at the Debtor's sole discretion, be adjourned to a subsequent hearing (an "Adjourned Objection"). Upon resolution of an

Adjourned Objection and subject to the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Objection may be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale. All objections to the potential assumption and assignment of the estate's right, title, and interest in, to, and under a Potentially Assumed Contract will be heard at the Sale Hearing, except with respect to an Adjourned Objection as set forth herein.

18.    If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Debtor a Contract Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Contract to the Successful Bidder or any Backup Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Contract, or any other document, and the Counterparty to the Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Contract against the estate or any Successful Bidder or their property.

## **MISCELLANEOUS**

19.    Nothing in this Order or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

20.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or

enforceability of such a provision.

21.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

22.     Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

BY THE COURT


_____
HONORABLE CATHLEEN D. PARKER
United States Bankruptcy Judge

## __Exhibit 1__

## **Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

In re:                                    )
                                          )
MODE ELEVEN BANCORP,                      ) Chapter 11
                                          )
                                          )
                                          ) Case No. 25-20240
Debtor in Possession.                     )

---

## BIDDING PROCEDURES

---

Mode Eleven Bancorp ("Debtor" or "Mode Eleven"), the above-captioned debtor-in-possession, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 9, 2025 (the "Petition Date"). The Debtor continues to manage its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Mode Eleven is a bank holding company headquartered in Hulett, Wyoming. The Debtor's primary asset is 100 percent of the outstanding equity in Summit National Bank, a Wyoming federal-chartered bank with three branch locations across Wyoming, Montana, and Idaho. Summit National Bank, which has retail and commercial banking operations, is not a debtor in this Chapter 11 case and continues to operate in the ordinary course of business. The Debtor has developed these procedures (the "Bid Procedures") to solicit competing bids for the sale (the "Sale") of substantially all of the Debtor's assets (collectively referred to as the "Assets") through one or more Bankruptcy Code section 363 sales or otherwise (each a "Transaction").

On July [ ], 2025, the Court entered the *Order (I) Approving the Bidding Procedures; (II) Approving Bid Protections; (III) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices; (IV) Scheduling the Bid Deadline, the Auction, and Sale Hearing; (V) Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. ●] (the "Bidding Procedures Order"),[1] by which the Court approved the following procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtor is authorized to conduct a marketing process and, if necessary, an auction (the "Auction") to determine the Transaction that provides the highest or otherwise best offer.

---

[1]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

1.     Bidding and Stalking Horse Bidder

a.     *Access to Diligence Materials/Online Data Room.*   The Debtor, through its proposed investment banker, Hovde Group, LLC ("Hovde"), has prepared an online data room (the "Data Room") that includes such information about the Assets that the Debtor and Hovde believe prospective bidders would consider relevant to an evaluation of whether to acquire the Assets.  The Data Room is maintained (and may periodically be updated) by Hovde. To obtain Data Room access (and any additional information about the Assets, the Sale, or procedures governing the Sale that may periodically be made available in the Data Room), prospective bidders must execute and deliver to Hovde the Confidentiality Agreement (as defined in Section 2 below).  Any prospective bidder who is unable to utilize the Data Room should contact Hovde, who will provide appropriate access to the Data Room to any party who requests it, upon such party's execution and delivery of the Confidentiality Agreement and after approval by the Debtor.  Hovde may limit Data Room access in its reasonable discretion.

b.     *Bids.*   Prospective bidders may submit written purchase offers ("Bids") to purchase the Assets in whole or in part.  All Bids must conform to the terms and conditions described herein, including the requirements for Qualified Bids as defined in Section 4.b below.  A Bid may include non-cash consideration, which shall be limited to credit bids and assumed liabilities or to other specific forms of non-cash consideration, subject to the approval of the Debtor in its sole discretion ("Non-Cash Consideration").  The decisions of the Debtor will be determinative, subject to Court approval, as to which Bids are the highest and best bids.

c.    *Bid Deadline.*  Bids must be delivered, electronically to Hovde at the email address indicated below so as to be actually received on or before **July 25, 2025 at 4:00 p.m. Mountain Time** (the "<u>Bid Deadline</u>").

1.    <u>Debtor's Counsel</u>. Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Abigail V. O'Brient (aobrient@cov.com); Kathrine L. Gutierrez (kgutierrez@cov.com).

2.    <u>Debtor's Co-Counsel</u>. Markus Williams Young & Hunsicker LLC, 2120 Carey Avenue, Suite 101, Cheyenne, WY 82001, Attn: Bradley T. Hunsicker (bhunsicker@markuswilliams.com); Lacey Bryan (lbryan@markuswilliams.com).

3.    <u>Debtor's Investment Banker</u>. Hovde Group, 2820 Selwyn Ave, Suite 315, Charlotte, NC 28209, Attn: Kirk Hovde (khovde@hovdegroup.com); Sean Enright (senright@hovdegroup.com).

d.    *Auction.*  If the Debtor receives multiple Qualified Bids (as defined below) or otherwise deems an auction to be necessary, the Debtor shall conduct the Sale by an auction (the "<u>Auction</u>") to be held **July 28, 2025 at 10:00 am Pacific Time**, at  the law offices of Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, California 90067, or at such other date and time as set by the Court or the Debtor. Only parties that have submitted Qualified Bids, and their representatives, will be allowed to bid and otherwise participate in the Auction.

e.    *Notice of Successful Bidder*.  No later than two (2) business days following the closing of the Auction, or following the Debtor's determination that it has received a Qualifying Bid and that no Auction is necessary, the Debtor will file on the docket a notice identifying the applicable bidder or bidders whose Bids constitute the highest and best offer for the Assets (each a "<u>Successful Bidder</u>" and each such bid a

"Successful Bid"), the relevant Assets, and key terms of the relevant agreements and will

seek the Bankruptcy Court's approval of the Agreement(s) memorializing such Bids at the

Sale Hearing.

f.    *Stalking Horse Bidder*. At any time on or before the commencement

of the Auction, the Debtor is authorized, but not obligated, in an exercise of its business

judgment to (i) select one or more Qualified Bidders to act as Stalking Horse Bidders; (ii)

enter into a Stalking Horse Agreement with each Stalking Horse Bidder so selected; and

(iii) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, (a)

provide a breakup fee (the "Breakup Fee") and (b) agree to reimburse the reasonable and

documented out of pocket fees and expenses (the "Expense Reimbursement" and, together

with the Breakup Fee, the "Bid Protections"), not to exceed three percent of the purchase

price with respect to the foregoing clauses (a) and (b) in the aggregate. The amount of any

Bid Protections may be added to and deemed a part of any Bid submitted by a Stalking

Horse Bidder.

2.    Due Diligence; Non-Disclosure

All prospective bidders will be required to execute a confidentiality and non-

disclosure agreement in a form acceptable to the Debtor (the "Confidentiality Agreement").

Prospective bidders may download the required Confidentiality Agreement from the Data

Room (or obtain a copy from Hovde) and must complete and return the agreement as

directed. **No prospective bidder may contact the Debtor directly, rather, they should**

**contact Hovde c/o Kirk Hovde (khovde@hovdegroup.com); Sean Enright**

**(senright@hovdegroup.com)**. Only after submission of a properly completed and signed

Confidentiality Agreement and after approval by the Debtor will prospective bidders be permitted to received diligence information and be provided access to the Data Room. Prospective bidders must complete due diligence prior to submission of their Bid(s).

       3.    <u>Indication of Interest Requirements</u>

       a.    Parties interested in purchasing the Assets or some subset of the Assets shall submit a non-binding indication of interest ("<u>Indication of Interest</u>" or "<u>IOI</u>") by **July 11, 2025 at 4:00 p.m. Mountain Time** (the "<u>IOI Deadline</u>"), which deadline may be extended without notice or hearing by the Debtor. Note that submitting an Indication of Interest by the IOI Deadline does not exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadline in order to participate in the Auction. The Indication of Interest should (i) identify whether the party is interested in acquiring all or substantially all of the Assets; (ii) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and Non-Cash Consideration; (iii) identify any proposed conditions to closing the transaction; and (iv) follow any additional requirements or provide any additional information requested by Hovde.

       b.    All Indications of Interests must be submitted by email to be actually received by the IOI Deadline, on or before **July 11, 2025 at 4:00 p.m. Mountain Time** by:

       1.    <u>Debtor's Counsel</u>. Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Abigail V. O'Brient (aobrient@cov.com); Kathrine L. Gutierrez (kgutierrez@cov.com).

       2.    <u>Debtor's Co-Counsel</u>. Markus Williams Young & Hunsicker LLC, 2120 Carey Avenue, Suite 101, Cheyenne, WY 82001, Attn:

6

Bradley T. Hunsicker (bhunsicker@markuswilliams.com); Lacey Bryan (lbryan@markuswilliams.com).

3.    <u>Debtor's Investment Banker</u>. Hovde Group, 2820 Selwyn Ave, Suite 315, Charlotte, NC 28209 at Attn: Kirk Hovde (khovde@hovdegroup.com); Sean Enright (senright@hovdegroup.com).

4.    <u>Qualified Bid Requirements</u>

a.    *Overview, Stock Purchase Agreement.*  Prospective bidders must submit a written offer to purchase the Assets by executing and delivering to Hovde a completed Stock Purchase Agreement (the "<u>Agreement</u>") in the form available in the Data Room (or from Hovde).  Purchasers that wish to purchase only certain portions of the Assets may submit forms of Agreement that cover only such portions, and shall consult with Hovde to determine appropriate forms of agreement for such offers. Prospective bidders that wish to propose changes to the Agreement may submit and discuss such changes with Hovde prior to Bid submission and shall submit a redline copy showing all changes to from Agreement.  Bids that do not conform to the Agreement may not be considered Qualified Bids (as defined below) unless the Debtor approves any changes to the Agreement.  The Agreement shall contain all the terms and conditions of the Sale and shall otherwise satisfy the requirements set forth in <u>Section 4.b</u> below.  The only action necessary for the Debtor to bind the Successful Bidder (defined below) to its Successful Bid (defined below) shall be to execute the submitted Agreement and any applicable Addendum (defined below) and obtain approval from the Bankruptcy Court.

b.    *Specific Requirements for Qualified Bids.*  Qualified Bids must:

1.    Be submitted in accordance with <u>Section 1.c</u> hereof on or before the Bid Deadline.

2.    Be accompanied by the prospective bidder's proposed and fully executed Agreement as described in <u>Section 4.a</u> above and a redline copy showing any changes to the form Agreement.

3.    Be accompanied by an initial deposit of ten percent of the aggregate Purchase Price of the Bid (the "<u>Deposit</u>") in form of a wire transfer of immediately available funds that shall be remitted pursuant to an escrow agreement to be provided by the Debtor. All Deposits shall be held as security for the related prospective bidder's performance of its obligations under the Agreement.   In the event any Bid is not deemed to be a Qualified Bid, the escrow agent shall return the prospective bidder's Deposit in accordance with the escrow agreement.

4.    State with specificity: (A) the assets proposed for purchase by the Bid; (B) all obligations to be assumed; (C) the consideration payable as the purchase price (the "<u>Purchase Price</u>"); and (D) an allocation of the Purchase Price among the applicable Assets. The Purchase Price should be provided in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis.

5.    Contain an acknowledgement by the prospective bidder that its Bid, if determined to be a Qualified Bid, is irrevocable and cannot be withdrawn unless and until the Debtor notifies such Qualified Bidder that such Bid has not been selected as the Successful Bid or a Backup Bid (each as defined below).

6.    Include information sufficient to establish, to the Debtor's satisfaction, that such prospective bidder has financial capability to fund the proposed Bid.

7.    Fully disclose (A) the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation; (B) any connections between such bidding entity and (i) the Debtor, its directors, officers, or shareholders, or (ii) any other party in interest in this chapter 11 case.

8.    Not be subject to further due diligence.

9.      Provide detail of the existence and anticipated timing of any regulatory or other approvals, consents, or authorizations that are required to close the Sale to such prospective bidder.

10.      Provide that the prospective bidder is prepared and agrees, in the event that its Bid is selected as a Successful Bid or Backup Bid (each as defined below), to execute an addendum to its Agreement (the "Addendum") amending the Purchase Price to reflect the amount of the Successful Bid or Backup Bid, as applicable, in a form acceptable to the Debtor.

11.      Include (A) a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtor of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals; and (B) set forth an estimated timeframe for (i) obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale and (ii) the Qualified Bidder's expected date of closing the Sale, which must be reasonably likely to be consummated, if selected, within a timeframe acceptable to the Debtor.

12.      Provide that the Bid may not be conditioned upon obtaining financing, any internal approvals, credit committee approvals or on the outcome or review of any due diligence.

13.      Contain an acknowledgement that the proposed Bid shall not provide for any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement (unless otherwise agreed to by the Debtor in the context of a Stalking Horse Agreement) and that, by submitting a proposed Bid, the bidder waives the right to any substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of the Bid.

14.      Include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed transaction; *provided* that, if the bidder is an entity specially formed for the purpose of effectuating the proposed transaction, then the bidder must

9

furnish written evidence reasonably acceptable to the Debtor of the approval of the submission of the Bid and consummation of the proposed transaction by the parent company or sponsor of such bidder.

15. Contain an acknowledgment and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (c) did not and will not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Assets or the completeness of any information provided in connection therewith or at an Auction, except those expressly stated in the Qualified Bidder's Agreement.

16. Contain an acknowledgement that it has complied, and will continue to comply, in all respects with these Bid Procedures, the Bankruptcy Code, and any applicable law. and agree that, after the conclusion of any Auction, it will not seek to submit a Bid or seek to reopen the Auction.

17. Contain an acknowledgement that it has not engaged in any collusion with respect to any Bids or the Sale and agree not to engage in any collusion with respect to the Bids, the Auction, or the Sale.

18. Contain an acknowledgement that it shall treat such Bid (including any modifications, subsequent Bids, or Overbids) and any related information thereto as confidential and shall not publicly disclose such information without the written consent of the Debtor until the earlier of (a) the date that is one year following the Bid Deadline and (b) entry of an order by the Bankruptcy Court requiring such disclosure.

All parties that submit Bids shall be deemed to have consented to exclusive and core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction and other matters related thereto.

5.    <u>Designation of Initial Best Bid</u>

Upon receipt of a Bid, the Debtor shall determine, in its sole discretion, if the Bid is a Qualified Bid.  Prior to the Auction, the Debtor may hold discussions with prospective bidders in order to clarify or amend their Bids.  The Debtor reserves the right to accept Bids and determine Qualified Bids up until the commencement of the Auction. After determining which Bids are Qualified Bids and prior to the commencement of the Auction, the Debtor shall designate the Qualified Bid or Qualified Bids that the Debtor believes to constitute the highest and best offer for the Assets (the "<u>Initial Best Bid(s)</u>").  In evaluating any Bid for designation as an Initial Best Bid, the Debtor intends to give primary weight to: (i) the value that such Bid will bring to the Debtor; (ii) the perceived ability of the prospective bidder to consummate the Sale quickly and efficiently; and (iii) other terms the Debtor believes is relevant. In the event there is only one Qualified Bid (or no Qualified Bids) for any specific Assets, then there shall not be an Auction for such Assets.

6.    <u>Auction</u>

*a.    Auction Schedule.*  In the event that the Auction is to occur, the Auction will be held **July 28, 2025 at 10:00 am Pacific Time** at the law offices of Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, California 90067. The Debtor reserves the right to reset the Auction to another time and place in the reasonable exercise of its business judgment.

*b.    Auction Participation*.  Only prospective bidders submitting Qualified Bids ("<u>Qualified Bidders</u>"), as determined at the sole discretion of the Debtor, shall be permitted to participate at the Auction.  All Qualified Bidders must have an authorized

representative appear in person at the Auction in order to participate, which authorized representative must have authority to execute and deliver immediately a binding, modified Agreement and Addendum with respect to a Successful Bid or Backup Bid submitted by such Qualified Bidder.

        c.     *Auction Procedures.*  Before the commencement of bidding at the Auction, the Debtor will announce its designation of the Initial Best Bid(s) made pursuant to <u>Section 5</u> above.  The Auction shall proceed in the order and manner deemed advisable by the Debtor to promote the most competitive bidding process possible.  During the Auction, subsequent Bids shall be at least $100,000.00 greater than the previous Bid (an "<u>Overbid Increment</u>"), or such other amount as the Debtor shall announce at the commencement of or during the Auction, in its sole discretion.  The Debtor shall include the amount of any Bid Protections provided to a Stalking Horse Bidder when determining the value of such bidder's bid.  The Debtor shall have the exclusive right to value any Bid or any Overbid Increment that includes Non-Cash Consideration. Upon completion of the Auction, the Debtor shall announce to the Qualified Bidders which Bid or Bids represent the highest and best offer for all or part of the Assets and are in the best interest of the Debtor, its estate, and its creditors (each a "<u>Successful Bid</u>") as well as any Bid that constitutes a Backup Bid (as defined below).

        d.     *Submission of Binding Agreement and Deposit.*  On selection of its Bid as the Successful Bid at the conclusion of the Auction, any winning Bidder (each a "<u>Successful Bidder</u>") shall immediately execute and deliver to the Debtor the Addendum to its Agreement that binds the Successful Bidder to perform its Successful Bid.

e.      *Backup Bids.*  The Debtor reserves the right to designate with respect to any Successful Bid a competing Bid or group of bids for all or a portion of the Assets (a "Backup Bid") submitted by a Qualified Bidder(s) (collectively, the "Backup Bidder") that shall be substituted for such Successful Bid in the event that the Successful Bidder is unable to consummate the Sale with respect to such Successful Bid. By submitting a competing Bid or participating in the Auction, each prospective bidder acknowledges and agrees that its competing Bid (whether submitted prior to or at the Auction) may be designated as a Backup Bid, that the Debtor may accept such Backup Bid as a Successful Bid, and that such Backup Bid shall remain open for acceptance by the Debtor until the closing of the Transaction with the Successful Bidder.  On selection of its Bid as the Backup Bid at the conclusion of the Auction, each such bidder shall immediately execute and deliver to the Debtor the Addendum to its Agreement that binds such Backup Bidder to perform its Backup Bid.

7.      Objections/Objection Deadline.

Objections, if any, to the proposed sale of the Assets or to the conduct of the sale process or the Auction must: be made in writing and be filed with the Bankruptcy Court and served no later than **July 31, 2025 at 4:00 pm prevailing Mountain Time, 2025** (the "Objection Deadline") upon all parties registered for CM/ECF service. A party's failure to timely file or make an objection shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with any Successful Bidder (or any Backup Bidder, if applicable) pursuant to the applicable Agreement, and shall be deemed to constitute any such party's consent to (a) entry of the Sale Order; (b)

the consummation of the Sale and all transactions related thereto, including, without limitation, assumption and assignment of any Potentially Assumed Contract; and (c) the transfer of the Assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the Agreement.

8.    Sale Approval Hearing ("Sale Hearing")

The Successful Bid and any Backup Bid shall be submitted to the Bankruptcy Court for the entry of an order approving the Sale (the "Sale Order") which shall also provide for the assumption and assignment of the Potentially Assumed Contracts to the Successful Bidder or Backup Bidder(s).  The sale of the Assets to the Successful Bidder or Backup Bidder(s) shall be on an "as is, where is" basis without representation or warranties of any kind, as further set forth in the Agreement.

9.    Closing

a.    The closing of the Sale to the Successful Bidder or Backup Bidder(s) shall be governed by the Agreement(s) with such bidder, these Bid Procedures, and the Sale Order. If the Successful Bidder fails (i) to timely perform its obligations under Section 6.d hereof or (ii) to timely close the Sale for any reason other than the Debtor's breach of the Agreement, then such Successful Bidder's Deposit shall be retained by the Debtor as liquidated damages, and the Debtor may proceed to close the Sale with the Backup Bidder.

b.    The Debtor reserves the right to reject any Bid that it deems to be: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, applicable Local Bankruptcy Rules, or the terms and conditions of these Bid Procedures (including as they

may be modified in accordance herewith); or (iii) contrary to the best interests of the Debtor, its estate, creditors, and other parties in interest. The Debtor shall have the right to seek assurance from any Qualified Bidder of its financial ability to consummate the Sale at its current bid Purchase Price, and its ability to obtain regulatory approval to consummate the Sale, and may disqualify any such Bidder from further participation in the sale process and/or Auction if such assurances are not provided to the reasonable satisfaction of the Debtor. Further, the Debtor reserves the right to extend, modify or terminate the sale process.

      c.     With respect to any Bid, the Debtor has no obligation, other than as set forth herein, (i) to negotiate the Agreement with any prospective bidder or (ii) to follow any procedures not contained in these Bid Procedures (including as they may be modified) regarding the methods or means by which the Debtor shall complete or choose not to complete the Sale. The Debtor shall have no legal obligation to any Bidder except as set forth in the Sale Order and any Agreement with a Successful Bidder that is approved by the Sale Order, other than any obligation to a Stalking Horse Bidder pursuant to a Stalking Horse Agreement. No Bidder shall have any claim against the Debtor, its estate, or its representatives arising out of the proposed Sale except for any claim against the Debtor resulting from the Debtor's failure to perform its obligations under such Bidder's Agreement as approved by the Sale Order.

      d.     Each unsuccessful prospective bidder, other than the prospective bidders submitting the Successful Bid and Backup Bid(s), will receive its Deposit after the conclusion of the Auction in accordance with the escrow agreement.

10.    <u>Reservation of Rights</u>

The Debtor reserves the right to take any and all actions necessary to implement the Bidding Procedures, including by modifying the Bidding Procedures in its business judgment in any manner that is not inconsistent with applicable law and will best promote the goals of the Bidding Procedures, including by: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; (v) requiring prospective bidders to provide additional information regarding their qualifications to acquire the Assets through a Sale as a condition to designating any such bidder as a Qualified Bidder, Stalking Horse Bidder, Successful Bidder, or Backup Bidder; and (vi) rejecting any or all Bids.

11.    <u>Contacts</u>

All contacts with the Debtor shall be conducted with and limited to contact with Hovde and the Debtor's counsel as follows:

Kirk Hovde
Sean Enright
Hovde Group, LLC
1629 Colonial Parkway
Inverness, IL 60067
Telephone: (312) 436-0779
Email:        Kirk Hovde (khovde@hovdegroup.com)
              Sean Enright (senright@hovdegroup.com)

Abigail V. O'Brient
Kathrine L. Gutierrez
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4826
Email:        aobrient@cov.com
              kgutierrez@cov.com

Bradley T. Hunsicker
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile (303) 830-0809
Email:        bhunsicker@MarkusWilliams.com

Lacey Bryan
Markus Williams Young & Hunsicker LLC
1775 Sherman Street, Suite 1950
Denver, Colorado 80203
Telephone: (303) 318-0128
Facsimile: (303) 830-0809
Email:        lbryan@markuswilliams.com

## **Exhibit 2**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

In re:                                           )
                                                 ) Chapter 11
MODE ELEVEN BANCORP,                             )
                                                 ) Case No. 25-20240
                                                 )
Debtor in Possession                             )

---

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND FREE AND CLEAR SALE HEARING

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      Mode Eleven Bancorp ("<u>Debtor</u>" or "<u>Mode Eleven</u>"),[1] the above-captioned debtor-in-possession, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 9, 2025 (the "<u>Petition Date</u>").  The Debtor continues to manage its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Mode Eleven is a bank holding company headquartered in Hulett, Wyoming.  The Debtor's primary asset is 100 percent of the outstanding equity in Summit National Bank, a Wyoming federal-chartered bank with three branch locations across Wyoming, Montana, and Idaho. Summit National Bank, which has retail and commercial banking operations, is not a debtor in this Chapter 11 case and continues to operate in the ordinary course of business. The Debtor has developed these procedures (the "<u>Bid Procedures</u>") to solicit competing bids for the sale (the "<u>Sale</u>") of substantially all of the Debtor's assets (collectively referred to as the "<u>Assets</u>") through one or more Bankruptcy Code section 363 sales or otherwise (each a "<u>Transaction</u>").

2.      On June 18, 2025, the Debtor filed with the Bankruptcy Court a motion [Docket No. ____] (the "<u>Motion</u>") seeking entry of an order (i) approving bidding procedures and certain Bid Protections in the event a Stalking Horse Bidder is designated (the "<u>Bidding Procedures</u>"), to be used in connection with the disposition  of substantially all of the estate's assets (the "<u>Assets</u>"); (ii) scheduling an auction for the Assets (the "<u>Auction</u>"); (iii) scheduling a hearing to approve the Transaction(s) (the "<u>Sale Hearing</u>"); (iv) authorizing certain procedures related to the Debtor's assumption and assignment of executory contracts and unexpired leases (the "<u>Assumption and Assignment Procedures</u>")

---

[1]      All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

in connection with any Transaction, including notice to each non-Debtor counterparty (each, a "Counterparty") to an executory contract or unexpired lease (collectively, the "Contracts") of the proposed cure amounts to cure all monetary defaults under the Contracts (the "Cure Costs"), if any, and notice of potential assumption and assignment of certain Contracts (collectively, the "Potentially Assumed Contracts") in connection with the Transaction; and (v) granting related relief.

3.      On June [ ], 2025, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __] approving the relief requested in the Motion.

4.      Pursuant to the Bidding Procedures Order, any person or entity interested in participating in the Auction must, among other things, submit a Bid (as defined in the Bidding Procedures) for the Assets so as to be **actually received** on or before **July 25, 2025, at 4:00 p.m. (prevailing Mountain Time)** (the "Bid Deadline") to:

a)    Debtor's Counsel. Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Abigail V. O'Brient (aobrient@cov.com); Kathrine L. Gutierrez (kgutierrez@cov.com).

b)    Debtor's Co-Counsel. Markus Williams Young & Hunsicker LLC, 2120 Carey Avenue, Suite 101, Cheyenne, WY 82001, Attn: Bradley T. Hunsicker (bhunsicker@markuswilliams.com); Lacey Bryan (lbryan@markuswilliams.com).

c)    Debtor's Investment Banker. Hovde Group, 1629 Colonial Parkway, Inverness, IL 60067, Attn: Kirk Hovde (khovde@hovdegroup.com); Sean Enright (senright@hovdegroup.com).

5.      If the Debtor receives two or more Qualified Bids (including any Stalking Horse Bid), the Debtor will conduct the Auction to determine the applicable bidder or bidders whose Bids constitute the highest and best offer for all or part of the Assets (each a "Successful Bidder" and each such bid a "Successful Bid"). The Debtor and its professionals shall direct and preside over the Auction in accordance with the Bidding Procedures and this Order.

6.      The Auction shall take place on **July 28, 2025 at 10:00 am prevailing Pacific Time**, at the law offices of Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, or such later date and time or location as selected by the Debtor. The Successful Bid and the Backup Bid (each as defined in the Bidding Procedures) shall be announced by the Debtor within two business days of the closing of the Auction.

7.      Any party wishing to object to approval of a Transaction and the sale to the Successful Bidder or Backup Bidder or to the conduct of the Auction (a "Sale Objection")

shall, by no later than **July 31, 2025 at 4:00 p.m. (prevailing Mountain Time)**, file and serve its Sale Objection upon all parties registered for CM/ECF service.

8.      Any party failing to timely file a Sale Objection will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the estate's right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Transaction and assumption and assignment of the specified executory contracts and unexpired leases.

9.      A hearing to consider approval of the Transaction and the sale to the Successful Bidder or Backup Bidder (the "Sale Hearing") will commence on **August 4, 2025 at [●] (prevailing Mountain Time)**, and otherwise in accordance with any scheduling order entered by the Court, before the Honorable Cathleen D. Parker, at the United States Bankruptcy Court for the District of Wyoming, 2120 Capitol Avenue, Suite 8010, Cheyenne, Wyoming. The Debtor's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtor's acceptance of such bid. The Debtor will have accepted the terms of a Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to an order. This Notice is subject to the fuller terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.

10.      Parties interested in submitting a Bid may receive additional information with regard to a Transaction, the Assets, the Auction, or the Bidding Procedures by sending a request for such information to Hovde Group LLC c/o Kirk Hovde (khovde@hovdegroup.com) and Sean Enright (senright@hovdegroup.com).

11.      A copy of the Motion, Bidding Procedures, all exhibits and schedules thereto, the Bid Procedures Order, the Auction and Sale Notice, and the Contracts Schedule, and certain other documents relevant to the Sale Transaction are available for inspection in the Bankruptcy Court Clerk's Office, 2120 Capitol Avenue, 6th Floor, Cheyenne, Wyoming 82001, and viewable at the Clerk's office and through access to the PACER and ECF systems.

## <u>Exhibit 3</u>

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| MODE ELEVEN BANCORP, | ) |
| | ) Case No. 25-20240 |
| | ) |
| Debtor in Possession | ) |

---

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH TRANSACTION

---

1.      Mode Eleven Bancorp ("Debtor" or "Mode Eleven"),[1] the above-captioned debtor-in-possession, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 9, 2025 (the "Petition Date"). The Debtor continues to manage its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Mode Eleven is a bank holding company headquartered in Hulett, Wyoming. The Debtor's primary asset is 100 percent of the outstanding equity in Summit National Bank, a Wyoming federal-chartered bank with three branch locations across Wyoming, Montana, and Idaho. Summit National Bank, which has retail and commercial banking operations, is not a debtor in this Chapter 11 case and continues to operate in the ordinary course of business. The Debtor has developed these procedures (the "Bid Procedures") to solicit competing bids for the sale (the "Sale") of substantially all of the Debtor's assets (collectively referred to as the "Assets") through a Bankruptcy Code section 363 sale or otherwise (a "Transaction").

2.      On June 18, 2025, the Debtor filed with the Bankruptcy Court a motion [Docket No. _____] (the "Motion") seeking entry of an order (i) authorizing and approving bidding procedures (the "Bidding Procedures"), to be used in connection with the disposition (the "Transaction") of substantially all of the estate's assets (the "Assets"); (ii) scheduling an auction for the Assets (the "Auction"); (iii) scheduling a hearing to approve the Transaction (the "Sale Hearing"); (iv) authorizing certain procedures related to the Debtor's assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") in connection with any Transaction, including notice to each non-Debtor counterparty (each, a "Counterparty") to an executory contract or unexpired lease (collectively, the "Contracts") of the Debtor's proposed cure amounts

---

[1]      All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

to cure all monetary defaults under the Contracts (the "Cure Costs"), if any, and notice of potential assumption and assignment of certain Contracts (collectively, the "Potentially Assumed Contracts") in connection with the Transaction; and (v) granting related relief.

3.      On June [ ], 2025, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __] approving the relief requested in the Motion.

4.      **The Sale Hearing will commence on August 4, 2025** at [●] **(prevailing Mountain Time)** before the Honorable Cathleen D. Parker, at the United States Bankruptcy Court for the District of Wyoming, 2120 Capitol Avenue, Suite 8010, Cheyenne, Wyoming. The Debtor's presentation to the Bankruptcy Court for approval of the highest or otherwise best bid resulting from the Auction (the "Successful Bid") does not constitute the Debtor's acceptance of such bid. The Debtor will have accepted the terms of the Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to an order. The Debtor will have accepted the terms of a Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to an order. This Notice is subject to the fuller terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.

5.      In connection with the Transaction, and in accordance with the Assumption and Assignment Procedures set forth in the Motion and the Bidding Procedures Order, the Debtor may seek to assume and assign to the Successful Bidder certain Contracts of the Debtor. Each of the Contracts is identified on Schedule 1 attached hereto. The inclusion of any Contract on Schedule 1 shall not constitute or be deemed a determination or admission by the Debtor, the Successful Bidder, or any other party in interest that such Contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved). The Cure Costs, if any, that the Debtor believes are required to be paid to the applicable Counterparty to cure any monetary defaults under each contract pursuant to Bankruptcy Code sections 365(b)(1)(A) and (B), to the extent that such Contract is ultimately assumed and assigned, are set forth on the Schedule 1.

6.      Any Counterparty to a Contract that wishes to object to the potential assumption, assignment, and sale of the Contract on any grounds, including the subject of which objection is either (i) the Debtor's proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract and/or the cure of any non-monetary defaults and/or (ii) an objection to the assignability of the Contract, whether on grounds that such contract is not assignable for any reason, including under the contract or based on applicable law, is not an executory contract or unexpired lease, or otherwise and/or (iii) the adequate assurance of future performance by the Successful Bidder (each, a "Contract Objection") shall file such objection no later than **July 31, 2025 at 4:00 pm (prevailing Mountain Time)**. Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed

with the Court and electronically served upon all parties registered for CM/ECF service in this case so as to be actually be received no later than above-referenced objection deadline.

7.     If the parties are unable to consensually resolve a Contract Objection prior to the commencement of the Sale Hearing, the resolution of issues raised by the Contract Objection will be determined at the Sale Hearing or, at the Debtor's sole discretion, be adjourned to a subsequent hearing (an "Adjourned Objection"). Upon resolution of an Adjourned Objection and subject to the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Objection may be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale. All objections to the potential assumption and assignment of the estate's right, title, and interest in, to, and under a Potentially Assumed Contract will be heard at the Sale Hearing, except with respect to an Adjourned Objection as set forth herein.

8.     If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Debtor a Contract Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Contract to the Successful Bidder or any Backup Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Contract, or any other document, and the Counterparty to the Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Contract against the estate or any Successful Bidder or their property.

9.     In the event that the Debtor identifies Counterparties that were not served with the Assumption and Assignment Notice, the Debtor may subsequently serve such Counterparty with an additional Assumption and Assignment Notice (each a "Supplemental Assumption and Assignment Notice"), and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file an objection with respect to such additional Counterparty shall be 4:00 p.m. (prevailing Mountain Time) on the date that is 14 days following service of the Supplemental Assumption and Assignment Notice.

10.     If a Counterparty fails to timely file with the Court and serve on the Notice Parties a relevant Contract Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Potentially Assumed Contract to the Successful Bidder (and Backup Bidder if the Backup Bidder becomes the Successful Bidder) and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Successful Bidder (and Backup Bidder if the Backup Bidder becomes the Successful Bidder) shall be deemed to have provided adequate assurance of future performance with respect to the applicable Potentially Assumed

Contract in accordance with Bankruptcy Code section 365(f)(2)(B), notwithstanding anything to the contrary in the Potentially Assumed Contract, or any other document.

11.     The Debtor reserves all rights, claims, and causes of action with respect to each Contract or other document listed on the Contract Notices. The Contract Notices shall be without prejudice to the Successful Bidder's rights (including any Backup Bidder's rights, if the Backup Bidder becomes the Successful Bidder), if any, under the asset purchase agreement, to subsequently exclude Potentially Assumed Contracts from the assumption or assignment prior to the closing of the Transaction.

12.     The Debtor's assumption and/or assignment of a Contract is subject to approval by the Bankruptcy Court and consummation of the Transaction. Absent consummation of the Transaction and entry of an order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor.

13.     A copy of the Motion, Bidding Procedures, all exhibits and schedules thereto, the Bid Procedures Order, the Auction and Sale Notice, and the Contracts Schedule, and certain other documents relevant to the Sale Transaction, are available for inspection in the Bankruptcy Court Clerk's Office, 2120 Capitol Avenue, 6th Floor, Cheyenne, Wyoming 82001, and viewable at the Clerk's office and through access to the PACER and ECF systems.