Abigail V. O'Brient (*pro hac vice pending*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4826
aobrient@cov.com

Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
James T. Markus *(pro hac vice pending)*
Lacey S. Bryan (Wyoming Bar No. 8-7016)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
bhunsicker@MarkusWilliams.com

PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION
MODE ELEVEN BANCORP

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| In re: | ) |
| | ) |
| MODE ELEVEN BANCORP, | ) Case No. 25-20240 |
| | ) |
| | ) |
| | ) Chapter 11 |
| Debtor in Possession. | ) |

**DECLARATION OF KIRK HOVDE IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES; (II) APPROVING BID PROTECTIONS; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND RELATED NOTICES; (IV) SCHEDULING THE BID DEADLINE, THE AUCTION AND SALE HEARING; (V) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (VI) GRANTING RELATED RELIEF**

I, Kirk S. Hovde, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of

perjury:

1

1.  I am the Managing Principal and Head of Investment Banking at Hovde Group, LLC ("Hovde").

2.  I submit this declaration in support of the Debtor's *Motion for Entry of an Order (I) Approving the Bidding Procedures; (II) Approving Bid Protections; (III) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices; (IV) Scheduling the Bid Deadline, the Auction and Sale Hearing; (V) Approving the Form and Manner of Notice Thereof; and (VI) Granting Related Relief* (the "Bidding Procedures Motion")[1] filed in the above-captioned case substantially contemporaneously with this declaration.

3.  Hovde is a leading boutique investment bank focused exclusively on the financial services sector. We provide a full suite of investment banking and capital markets, research, equity sales and trading services to our client base, which includes community and regional banks and other financial companies located throughout the United States. Hovde draws from deep industry expertise in the financial services sector.

4.  As Managing Principal and Head of Investment Banking at Hovde, I am responsible for leading the investment banking practice, as well as evaluating the financial and strategic options of financial institutions and providing analysis and valuation for depository institutions similar to Summit National Bank (the "Bank"). In my capacity as Head of Investment Banking, I regularly facilitate M&A transactions and capital offerings similar to the transactions proposed in the Bidding Procedures Motion, representing both

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

buyers and sellers of assets similar to the Debtor's ownership interest in the Bank (the "Bank Equity Interests").

5. Given my experience, and given my access to additional experience and knowledge provided by the many skilled professionals employed by Hovde, I am highly familiar with the process of marketing and selling assets like the Bank Equity Interests, the current market for the Bank Equity Interests, and potential buyers' requirements related to the time and information necessary to consider and execute a bid for the Bank Equity Interests.

6. It is my belief that the timeline requested by the Debtor in the Bidding Procedures Motion is appropriate and adequate for a value-maximizing sale of the Bank Equity Interests, particularly given the prepetition marketing conducted by the Debtor and Hovde. I believe that the proposed Bidding Procedures afford potential buyers for the Bank Equity Interests more than adequate time to diligence the Bank, consider whether to make an offer for the Bank Equity Interests, determine how to value the Bank Equity Interests, and, if desired, to provide Hovde and the Debtor with both an Indication of Interest and a Qualified Bid by the applicable deadlines.

7. In my experience, it would not be unusual for a similar sale outside of bankruptcy to require three to four weeks from the time that non-disclosure agreements were signed until obtaining non-binding Indications of Interest ("Indication of Interest" or "IOI") followed approximately two weeks afterward for submission of bids. The proposed Bidding Procedures provide for a similar timeline, which would be sufficient even without taking into account the extensive marketing work that has been engaged in prior to the

Petition Date (and between the Petition Date and the filing of the Bidding Procedures Motion). (For example, we have been reaching out to potential buyers since before the Petition Date, and are currently expecting to enter into multiple non-disclosure agreements with potential buyers within the week).

8.      Within bankruptcy, I would expect the sale process to proceed even more expeditiously, given the potential for the Debtor's assets to be sold free and clear under Bankruptcy Code section 363(f), limiting the amount of diligence necessary for potential buyers. In addition, the announcement of the potential sale of the Assets, by way of the bankruptcy filing, is, in my experience, likely to facilitate an expedited marketing and sale process. After receiving that notice, buyers have access to public information about the Bank – because it is a regulated entity – that they can use to begin their internal processes for evaluating a potential sale even before they enter into a non-disclosure agreement and gain access to the Data Room.

9.      Hovde begun marketing the Assets in earnest before the Petition Date, reaching out to potential buyers and laying the groundwork for an efficient sale process. Since the Debtor engaged Hovde, Hovde has undergone efforts to market the Debtor's assets and provide logistical support for the sale process, including setting up the Data Room to facilitate the diligence process for potential buyers.  The Data Room has been populated with confidential information including financial statements, significant agreements, and operational details relevant to the Debtor's Assets.  Hovde has also used its significant experience and contacts in the market to identify potential buyers to determine their interest in purchasing the Assets, a process it continues to undertake.

10. In addition, Hovde has been negotiating non-disclosure agreements with numerous potential buyers. Prior to the Petition Date, nine interested parties entered into non-disclosure agreements with the Debtor, including two banks and a credit union. Since the Petition Date, Hovde has been in contact with an additional ten potential buyers that have entered into or are anticipated to enter into non-disclosure agreements with the Debtor within the next several days. These potential purchasers include several state-chartered banks with, in aggregate, over $6 billion in assets and capital, as well as several other potential purchasers that own bank holding companies, banks and credit unions. In addition to the parties it has already contacted, Hovde is in the process of reaching out to more than thirty financial institutions, many of whom would face reduced regulatory scrutiny given that they are already state- or federally-chartered.

11. Hovde continues working diligently with the Debtor to continue to seek potential purchasers, respond to inquiries from prospective buyers, and work to facilitate the diligence and bidding process.

Dated: June 18, 2025         */s/ Kirk S. Hovde*

Kirk S. Hovde
Hovde Group, LLC
1629 Colonial Parkway
Inverness, IL 60067