B2030 (Form 2030) (12/15)

## United States Bankruptcy Court
**District of Wyoming**

In re **MODE ELEVEN BANCORP**      Case No. **25-20240**
Debtor(s)      Chapter **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   | | |
   |---|---|
   | For legal services, I have agreed to accept | $ **995-$1,325 per hour** |
   | Prior to the filing of this statement I have received | $ **230,262.00** |
   | Balance Due | $ **N/A** |

2. The source of the compensation paid to me was:

   ■ Debtor      ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ■ Debtor      ☐ Other (specify):

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
       **See attached engagement letter.**

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
       **N/A**

---

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| | |
|---|---|
| **June 20, 2025** | **/s/ Abigail V. O'Brient** |
| *Date* | **Abigail V. O'Brient** |
| | *Signature of Attorney* |
| | **Covington & Burling LLP** |
| | **1999 Avenue of the Stars** |
| | **Los Angeles, CA 90067-4643** |
| | **424-332-4800** |
| | **aobrient@cov.com** |
| | *Name of law firm* |

## COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

May 1, 2025

*Via Email*

John Miller
Mode Eleven Bancorp

Angela Angelovska-Wilson
Representative Director
Mode Eleven Bancorp

133 Main Street
Hulett, Wyoming 82720

Dear John and Angela:

We are very pleased to confirm that we will represent Mode Eleven Bancorp (fka Hulett Bancorp) ("Mode Eleven" or "the Company"), a bank holding company, with respect to the Company's assessment and potential implementation of strategic alternatives, the sale of its wholly owned subsidiary, Summit National Bank ("Summit" or "the Bank"), and bank regulatory issues arising in connection with those matters. We appreciate the opportunity to work with you on this engagement.

We understand that Mode Eleven will be our client with respect to these matters. Our representation will not extend to other matters or to related parties. If by subsequent agreement our representation is extended to other matters, the provisions of this letter will also apply to those matters unless we otherwise agree in writing.

I will be in charge of the engagement overall. Abigail O'Brient will assist the Company in assessing and potentially implementing strategic alternatives. Charlotte May will lead the transactional work associated with the sale of Summit. Randy Benjenk and I will provide bank regulatory advice. We will call on other lawyers as appropriate.

We will render our statements to you monthly. Our fees for lawyers, legal assistants and other professionals will be based on the hourly rates we described in our proposal submitted to Mode Eleven on April 10, 2025; specifically, $1,325 per hour for senior lawyers; $995 per hour for associates; and $450 per hour for professional staff. As we advised in our proposal, these rates reflect substantial discounts on our key timekeepers and provide access to Covington's deep bench of experienced and specialized partners at the same cost-efficient, predictable rate (e.g., our normal hourly rates for partners currently range from $1,525 to $2,900). This structure would remain in place through December 31, 2025. Should work continue beyond this timeframe, we will negotiate adjustments with Mode Eleven, as needed.

You have agreed to pay us [$250,000] as an initial retainer for this engagement. In addition, you have agreed to provide one or more additional advance payment retainers as necessary, so as to ensure that the amount of any advance payment retainers remain at or above our

**COVINGTON**

estimated fees and expenses. We may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. You understand and acknowledge that any advance payment retainers are earned by us upon receipt, any advance payment retainers become our property upon receipt, you no longer have a property or any other interest in any advance payment retainers upon our receipt, any advance payment retainers will be placed in our general account and will not be held in a client trust, escrow or similar account, and you will not earn any interest on the advance payment retainers. The purpose of the advance payment retainer is to ensure that we do not become a creditor of the Company and will not be disqualified from representing the Company in any liquidation, reorganization, or similar proceeding, including in any case under Title 11 of the United States Code. The advance payment retainer is not a security deposit or security retainer. Notwithstanding payment of the advance payment retainers, the Company shall remain liable to us for all amounts owed to us pursuant to the terms of this engagement letter. At the conclusion of this engagement, if the amount of any advance payment retainers held by us are in excess of the amount of our outstanding and estimated fees, expenses and costs, we will pay to you an amount equal to the amount by which any advance payment retainers exceed such fees, expenses and costs.

Our statements will include charges for support services incurred on your behalf, such as printing, duplicating, transcripts, computer research, telecommunications, any secretarial overtime attributable to your special needs, mail, deliveries and the like, as well as out-of-pocket costs, such as travel. If substantial third-party payments (such as co-counsel fees, expert fees, special studies, transcripts, or any single charge of more than $1,000) are required, we reserve the right to forward the charge to you for you to pay directly, or to ask you to advance to us funds sufficient to allow us to pay the charge on your behalf. The discount on fees described above does not apply to charges for these services and out-of-pocket costs.

Payment of our statements in full is due within 30 days of receipt. We reserve the right to charge interest on any portion of a statement that is not paid on time. If any statement remains unpaid for more than 60 days, you agree that we will have the right to cease performing services until satisfactory arrangements have been made for payment of outstanding statements and payment of future statements. Alternatively, we may apply your retainer to that statement and may cease performing services until you have restored the retainer amount. If you have a question regarding a particular charge or other aspect of a statement, we hope you will raise it with us, but we expect timely payment of the portion not subject to question.

The fees and costs relating to this matter cannot be predicted with certainty. Accordingly, although we have provided you with an estimate as to the fees and costs, we have made no commitment to you concerning the maximum fees and costs that will be necessary to resolve or complete this matter. We will do our best to keep you advised as the matter goes along of any change in our estimate of the fees and costs that will be incurred. It is expressly understood that payment of the firm's fees and costs is not contingent on the ultimate outcome of the matter.

Notwithstanding anything in this letter to the contrary, in the event you commence a case seeking relief under Title 11 of the United States Code (a "Bankruptcy Case"), our engagement by you, and the right of the Firm to receive fees and reimbursement and expenses after the date such Bankruptcy Case is commenced, shall be subject to application and order of the court in which the Bankruptcy Case is venued.

2

**COVINGTON**

Our records reveal no representation of another client adverse to you in any existing matter presently being handled by this firm or in this matter.  However, as you recognize, we are a large law firm with multiple practices in multiple offices throughout the world, and we represent many different clients in many different industries, including clients who are competitors of each other and sometimes adversaries in legal matters.  In taking on this representation, we commit that we will not represent any other client in any matter adverse to you that is substantially related to this matter.  In this context, "substantially related" is a term that has come to have a settled meaning in the case law and in Bar ethics opinions.  What this commitment means is that we will not take on any matter adverse to you on behalf of another client in circumstances in which any of your confidential data or information, as normally would have been obtained by us in our representation of you, would be material to any new matter adverse to you that we might accept from another client.

In return for our agreement to represent you in this matter, you consent and agree that we may be adverse to you on behalf of other clients in matters that are not substantially related to the matter we are now undertaking on your behalf or to any additional matter we may undertake on your behalf in the future.  This means that we might be adverse to you in litigation, intellectual property matters (including patent litigation), transactional matters, counseling, matters involving administrative agencies, lobbying and other legislative matters, or any other type of matter so long as the matter is not substantially related to work we have performed for you.

In addition, if there are parties adverse to you in the matter we are undertaking on your behalf, it is possible that those adverse parties will have need for counsel in matters that are not adverse to you and which do not have a substantial relationship to the matter in which we represent you.  Even though we would, as a result, be receiving some fee income from your adversary, you consent to our representing such parties in such matters.  We, for our part, commit to continued zealous representation of your interests in the matters in which we do represent you notwithstanding any fee income we may receive from your adversary.

You agree that both you and our firm may use electronic devices and Internet services to communicate with each other and forward documents notwithstanding some risk that such communications may be intercepted by and disclosed to unauthorized parties.  You agree that the benefits of using such technology outweigh the risks of unauthorized disclosure.

Covington & Burling LLP is a limited liability partnership organized under the laws of the District of Columbia.  Under this form of partnership, a partner's personal assets are not subject to claims against the firm (and other partners) based on contracts, professional negligence or other liability unless the partner is personally liable based on his or her own conduct.

I trust this letter accurately states our mutual understanding.  If you have questions about any aspect of it, please let me know promptly.  Otherwise please confirm our understanding by signing and returning a copy of this letter to me.

3

**COVINGTON**

We very much appreciate your selecting our firm to assist you, and we look forward to working with you on this matter.

Sincerely,

*Karen Solomon*

Karen Solomon

Mode Eleven Bancorp

*John Miller*

John Miller

CEO

4