Abigail V. O'Brient (*admitted pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4826
Email:  aobrient@cov.com

Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email:  bhunsicker@MarkusWilliams.com

COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION
MODE ELEVEN BANCORP

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: | ) |
| | ) |
| MODE ELEVEN BANCORP, | ) Chapter 11 |
| | ) |
| | ) |
| | ) Case No. 25-20240 |
| Debtor in Possession. | ) |

### DECLARATION OF VICTOR REMSHA

I, Victor Remsha, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1. I am Victor Remsha ("I" or "Buyer").  In my individual capacity, I, along with my legal and financial representatives, was involved in the negotiation of the share purchase agreement (the "SPA") between myself and the above-captioned chapter 11 debtor and debtor in possession (the "Debtor") for the sale of substantially all of the Debtor's assets.

2. This declaration (this "Declaration") is submitted in support of the *Motion of Debtor and Debtor in Possession Mode Eleven Bancorp for an Order: (A) Approving the Share*

*Purchase Agreement and Authorizing the Sale of Substantially All of the Debtor's Assets; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests; (C) Authorizing Assumption and Assignment of Certain Executory Contracts Pursuant to Bankruptcy Code Section 365; and (D) Granting Related Relief* [Dkt. 61] filed in the above-captioned chapter 11 case of the Debtor. Specifically, I provide this Declaration in support of a finding by the Court, pursuant to 11 U.S.C. § 363(m), that I am a "good faith" purchaser of the Debtor's assets.

3. Except as otherwise set forth herein, all statements in this Declaration are based on my own personal knowledge. If called on to testify in this matter, I can and would competently testify to the matters set forth herein.

   A. **Background on Buyer**

4. I am a director of the Debtor with significant experience across various international business sectors, including experience in the U.S. banking industry. I have gained substantial U.S. banking industry knowledge, and believe I am able to gain the necessary regulatory approvals to close the proposed transaction.

   B. **Buyer's Bid**

5. I learned of the potential sale of the Debtor's assets in my capacity as a director of the Debtor. I engaged in conversation with the Debtor's investment bank, Hovde Group, LLC ("Hovde") and became interested in submitting a bid for the purchase of the Debtor's assets.

6. I, in coordination with Hovde, conducted due diligence and engaged in arms-length, good faith negotiations with the Debtor regarding a potential purchase of the Debtor's assets. I entered into a non-disclosure agreement with the Debtor and was granted access to a confidential virtual data room ("VDR") containing information and materials relevant to my due diligence efforts. After gaining access to the VDR and conducting initial due diligence, in

accordance with the bidding procedures approved by that certain *Order (I) Approving the Bidding Procedures; (II) Approving Bid Protections; (III) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices; (IV) Scheduling the Bid Deadline, the Auction and Sale Hearing; (V) Approving the Form and Manner of Notice Thereof; and (VI) Granting Related Relief* [Dkt. 83] (such approved bidding procedures, the "Bidding Procedures"), I submitted an indication of interest indicating my interest in a potential purchase of the Debtor's assets.

7. Following the submission of my indication of interest, I continued my due diligence and arms-length, good faith negotiations with the Debtor. On July 25, 2025, the deadline to submit a qualified bid ("Qualified Bid") for the Debtor's assets, I submitted a Qualified Bid, which included a draft of the SPA indicating the terms on which I was willing to purchase the Debtor's assets.

8. Multiple bidders having submitted a Qualified Bid, the Debtor held an auction ("Auction") on July 28, 2025, in which I participated in additional arms-length, good faith negotiations with the Debtor. The Auction was adjourned on July 28, 2025.

### C. Buyer's Bid Represents the Highest and Best Value

9. I understand that the Debtor has determined that I submitted the Qualified Bid representing the highest and otherwise best value for the Debtor's assets and, as such, has designated my bid as the Successful Bid.

10. Following the designation of my bid as the Successful Bid, on July 30, 2025, the Debtor and I entered into the SPA. The terms of the SPA were negotiated on an arm's-length, good faith basis between the Debtor and myself and our respective advisors, based on what I believe to be the fair value of the assets subject to the SPA.

### D. Entry into Purchase Agreement

11. The negotiation of the SPA was conducted at arm's length and in good faith, without any collusion or fraud. Further, I was not a party to any agreement with any other bidder to control the sale price or discourage competitive bidding for the Debtor's assets.

12. Among other things, (i) I have complied with the provisions of the Bidding Procedures, (ii) my bid was subject to a competitive bidding process, (iii) the Debtor and I were each represented by our own legal counsel and advisors during the negotiation and execution of the SPA, and (iv) my bid and the SPA were negotiated between the Debtor's and my respective advisors in good faith and on an arm's-length basis.

13. Throughout the bidding process, I had no contact with other bidders, except as reflected on the record at the Auction.

14. Although I remain a member of the Debtor's board of directors, I did not participate in the Debtor's sale process in my capacity as a director. On May 16, 2025, the Debtor formed a Special Committee, of which I am not and was never a member, to which it delegated, among other things, the task of exploring, reviewing, evaluating, considering and negotiating transactions and/or other strategic or financial alternatives involving the Debtor, including a potential sale of the Debtor's assets. I had no role in formulating or approving the Bidding Procedures, the Debtor's conduct of the sale process, the Debtor's consideration of bids, or the Debtor's negotiations with potential purchasers. All aspects of my participation in the sale process were handled through discussions and negotiations between my advisors and the Debtor's professionals.

15. I recognize that the Debtor was free to deal with any other party interested in acquiring the Debtors assets in accordance with the Bidding Procedures. In agreeing to purchase

the Debtor's assets, I am not motivated by an attempt to gain an unfair advantage over, or otherwise harm, the Debtor, its creditors, or any other stakeholders.

16. All payments required to be made by me pursuant to the SPA in connection with the proposed sale have been disclosed.

17. Neither I nor the Debtor have engaged in any conduct that would cause or permit the SPA to be avoided or be the basis for an award of money damages under 11 U.S.C. § 363(n).

18. I have been working internally with my counsel towards consummation of the transactions contemplated by the SPA and expect to continue that work if the transactions are approved by this Court. I intend to consummate the sale immediately following receipt of all requisite approvals from the Court and the relevant regulatory authorities.

Dated: July 31, 2025                    */s/ Victor Remsha*

                                        Victor Remsha