Abigail V. O'Brient (*admitted pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4826
Email: aobrient@cov.com

Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Markus Williams Young &
Hunsicker LLC 2120 Carey Avenue,
Suite 101
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@MarkusWilliams.com

COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION
MODE ELEVEN BANCORP

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| MODE ELEVEN BANCORP, | ) |
| | ) Case No. 25-20240 |
| | ) |
| Debtor in Possession | ) |

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION MODE ELEVEN BANCORP FOR AN ORDER APPROVING COMPROMISE OF CONTROVERSY WITH NEXO INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Debtor and debtor in possession Mode Eleven Bancorp (the "Debtor"), by and through its undersigned counsel, hereby files this *Motion for Order Approving*

*Compromise of Controversy with Nexo Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019*, and respectfully states as follows:

### RELIEF REQUESTED

1. By this Motion, the Debtor seeks the entry of an order, substantially in the form attached hereto, approving this Motion and authorizing the Debtor and Nexo Inc. ("Nexo") to take all actions necessary to effectuate the settlement agreement (the "Settlement Agreement") attached hereto as **Exhibit 1**.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 152(b). Venue is proper pursuant to 28 U.S.C. § 1408.

3. The bases for the relief requested herein are section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

**A.    The Chapter 11 Case**

4. On June 9, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "Court"), commencing the above-captioned bankruptcy case. The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. As described further in the *Declaration of John Miller, CEO of Mode Eleven Bancorp, in Support of Chapter 11 Petition and Related Motions* [Dkt. 6], the Debtor filed this Chapter 11 case to (i) preserve the value of its assets, particularly its equity interest in Summit National Bank (the "Bank"), for the benefit of stakeholders, including the rural communities served by the Debtor and the Bank, and (ii) conduct a robust and fair sale process to facilitate the sale of substantially all of its assets under section 363 of the Bankruptcy Code, including its interest in the Bank, to a well-funded purchaser capable of obtaining the requisite regulatory approvals to consummate the transaction.

6. On August 4, 2025, the Court approved the sale of the Debtor's equity interest in the Bank for $5,450,000. [Dkt. 123]. The successful bidder and back-up bidder have not obtained regulatory approval to consummate the sale, and the Debtor is currently analyzing various options with respect to its interest in the Bank.

**B.    The Nexo Claims**

7. On or about February 1, 2022, the Debtor and Nexo entered into a subscription agreement pursuant to which the Debtor sold 1,060 shares of voting common stock to Nexo for $5,003,200. [Claim No. 3-4]. Around the same time, on or about February 8, 2022, the Debtor and Nexo entered into a Strategic Relationship Agreement (the "SRA"). [Claim No. 4-4].

8. On August 8, 2025, Nexo filed two proofs of claim. In Claim No. 3, Nexo asserts a general unsecured claim in the amount of $5,003,200.00 based on Nexo's demand, on March 10, 2025, for recission of the subscription agreement (the "Recission Claim"). [Claim No. 3].

9. In Claim No. 4, Nexo asserts a general unsecured claim based on the Debtor's alleged breach of the SRA (the "SRA Claim"). [Claim No. 4]. On October 17, 2025, Nexo filed a motion to amend Claim No. 4 to assert a claim amount of $7,564,321, which motion was granted on November 6, 2025. [Dkt. 197, at ¶¶ 5-6; Dkt. 213].

10. On November 5, 2025, the Debtor objected to the SRA Claim on the basis that the SRA is an agreement to agree, not a contract under which Nexo has any right to damages (the "Claim Objection"). [Dkt. 211]. Nexo disputes the Debtor's position, and filed an opposition to the Claim Objection on December 8, 2025. [Dkt. 231].

### C. The Debtor's Plan

11. On September 8, 2025, the Debtor filed its *Subchapter V Plan of Liquidation* (as may be amended, restated, and modified from time to time, the "Plan"). [Dkt. 168]. In pertinent part, the Plan provides for distribution of the proceeds of the Debtor's assets in accordance with the Bankruptcy Code's priority scheme. [Dkt. 174]. A hearing on confirmation of the Plan is scheduled for January 15, 2026. [Dkt. 226].

12. The Plan classifies the Recission Claim in Class 2 (Subordinated Claims), and the SRA Claim in Class 1 (General Unsecured Claims). In addition, Nexo holds equity interests classified in Class 4 on account of its shares in the Debtor. The Plan provides that holders of Class 1 Claims will receive the proceeds of the Debtor's assets, following payment of administrative expense claims and priority tax claims, until all general unsecured claims are satisfied in full. [Dkt. 174, § 5.1].

13.     Nexo objected to confirmation of the Plan [Dkt. 196], and submitted Class 1 and Class 4 ballots voting to reject the Plan.[1]

## THE PROPOSED SETTLEMENT

14.     To resolve the parties' disputes concerning the SRA Claim and the Plan and avoid additional delay, legal expenses, and other costs, Nexo and the Debtor have agreed upon the terms set forth in the Settlement Agreement.

15.     In material part, the Settlement Agreement provides that:[2]

   a. The SRA Claim will be an allowed general unsecured claim, classified with other general unsecured claims in Class 1 under the Plan, in the amount of $1,000,000. Following approval of the Settlement Agreement, Nexo will amend the SRA Claim in accordance with the Settlement Agreement, and the Debtor will withdraw its objection to the SRA Claim.

   b. The Debtor shall amend the Plan's waterfall analysis to reflect the allowed amount of the SRA Claim. Nexo will not object to confirmation of the amended Plan (or any further amended version thereof) provided that the terms thereof (i) contain a distribution waterfall with a priority scheme consistent with the amended Plan; (ii) do not contain releases, exculpations, or injunctions broader than the releases, exculpations and injunctions in the Plan; and (iii) include a waterfall analysis reflecting the allowed amount of the SRA Claim pursuant to the Settlement Agreement. Nexo shall vote to accept the Plan, and to opt into the Plan's releases.

   c. The parties will grant and exchange mutual releases (which shall not release Nexo's claims against Forrest Gilman, the Debtor's former CEO).

16.     The compromise contemplated by the Settlement Agreement is in the best interest of the Debtor, its estate, and all of its stakeholders. The settlement prevents the

---

[1] Class 2 Claims are unimpaired and not entitled to vote on the Plan.

[2] To the extent there is a conflict between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

need for additional costly litigation and streamlines the path to confirmation of the Plan and closure of this case.

## AUTHORITY AND ARGUMENT

17. Bankruptcy Code § 105(a) and Bankruptcy Rule 9019(a) grant this Court authority to approve the Settlement Agreement. "The law generally favors compromises and settlements of disputes between parties." *In re Local Serv. Corp.*, Nos. 08-15543-EEB, 07-21077-EEB, 2011 Bankr. LEXIS 4987, at *18 (Bankr. D. Colo. Dec. 19, 2011) (citing *Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972)).

18. "In evaluating a proposed settlement, the bankruptcy court is not required to conduct a mini-trial . . . or decide numerous questions of law and fact, but it must canvas the issues to determine whether the proposed settlement falls below the lowest point in the range of reasonableness." *Liberty Bank, F.S.B. v. D.J. Christie, Inc.*, 681 F. App'x 664, 667-68 (10th Cir. 2017) (internal quotation marks omitted). "A court's general charge is to determine whether the settlement is fair and equitable and in the best interests of the estate." *Id.* at 667 (internal quotation marks omitted) (quoting *Rich Global, LLC v. Zubrod (In re Rich Global, LLC)*, 652 F. App'x 625, 631 (10th Cir. 2016)).

19. "Four factors guide the bankruptcy court's analysis of a proposed settlement agreement: (1) the chance of success of the litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interests of the creditors." *Id.* at 668 (internal quotation marks omitted) (quoting *In re Rich Global*, 652 F. App'x at 631). "[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the

settlement is within the reasonable range of litigation possibilities." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citation and internal quotation marks omitted).

20. Here, the compromise reflected in the Settlement Agreement satisfies the relevant factors under Bankruptcy Rule 9019. As to the first factor, while the Debtor believes the Claim Objection is meritorious, Nexo has filed an opposition to the Claim Objection and there are always risks, costs, and delays attendant to pursuing litigation. The second factor is neutral in that the Debtor does not seek a monetary judgment against Nexo. The third factor weighs in favor of approval of the Settlement, because litigation of the Claim Objection may be protracted and expensive, particularly if discovery, an evidentiary hearing, and expert analysis regarding Nexo's asserted damages are required. Lastly, the Settlement Agreement is in the best interests of creditors. It will prevent the expenditure of significant estate resources to litigate the Claim Objection, and will ensure confirmation of the Plan proceeds on a fully consensual basis as between the Debtor, its creditors, and its shareholders.

21. For these reasons, the Settlement Agreement is fair, reasonable and in the best interests of creditors, and should be approved.

**WHEREFORE**, the Debtor respectfully requests this Court approve the Settlement Agreement and the compromise with Nexo embodied therein, enter the proposed order attached hereto as **Exhibit 2**, and grant such other and further relief as the Court deems just and proper.

Dated: December 22, 2025

Respectfully submitted,
COVINGTON & BURLING LLP

By: /s/ *Abigail V. O'Brient*

Abigail V. O'Brient (admitted *pro hac vice*)
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: 424-332-4846
Email: aobrient@cov.com

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: /s/ *Bradley T. Hunsicker*

Bradley T. Hunsicker (WY Bar No 7-4579)
Markus Williams Young & Hunsicker LLC
2120 Carey Avenue, Suite 101
Cheyenne, WY 82001
Telephone: 307-778-8178
Facsimile: 307-638-1975
Email: bhunsicker@markuswilliams.com

*Counsel for Debtor and Debtor-in-Possession Mode Eleven Bancorp*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Motion for Order Approving Compromise of Controversy with Nexo Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019* was filed and served this 22nd day of December, 2025, upon those registered for notice via CM/ECF.

*/s/ Abigail V. O'Brient*
Abigail V. O'Brient