# **EXHIBIT 1**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into effective as of December 12, 2025 (the "Agreement Date"), by and between Mode Eleven Bancorp, a Wyoming corporation (the "Debtor"), and Nexo Inc., a Cayman Islands corporation ("Nexo" and, together with the Debtor, the "Parties" and each, a "Party").

## RECITALS

**WHEREAS**, the Parties are party to (i) that certain Subscription Agreement dated as of February 1, 2022 (the "Subscription Agreement"); and (ii) that certain Strategic Relationship Agreement dated as of February 8, 2022 (the "SRA").

**WHEREAS**, on June 9, 2025, the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "Court"), thereby commencing the case captioned *In re Mode Eleven Bancorp*, case no. 25-20240 (the "Bankruptcy Case").

**WHEREAS**, on August 8, 2025, Nexo filed a proof of claim in the Bankruptcy Case asserting a general unsecured claim in the amount of $5,003,200 on account of the Subscription Agreement, which proof of claim is reflected as Claim No. 3 on the official claims register in the Bankruptcy Case (the "Subscription Agreement Claim").

**WHEREAS**, on August 8, 2025, Nexo filed a proof of interest in the Bankruptcy Case in connection with Nexo's ownership of 1,060 shares of Common Voting Stock (the "Nexo Shares") [Dkt. 132]. Nexo acquired the Nexo Shares through the Subscription Agreement.

**WHEREAS**, on August 8, 2025, Nexo filed a proof of claim in the Bankruptcy Case asserting a general unsecured claim in an unliquidated amount on account of the SRA, which proof of claim is reflected as Claim No. 4 on the official claims register in the Bankruptcy Case (as amended, the "SRA Claim"). On November 7, 2025, Nexo amended the SRA Claim to assert a claim amount of $7,564,321.

**WHEREAS**, on September 15, 2025, the Debtor filed *Debtor's Amended Subchapter V Plan of Liquidation* [Dkt. 174] (the "Plan") in the Bankruptcy Case.

**WHEREAS**, the Plan classifies the SRA Claim in Class 1, and the Subscription Agreement Claim and Nexo Shares in Class 4.

**WHEREAS**, on October 17, 2025, Nexo filed its *Objection to Debtor's Amended Subchapter V Plan of Liquidation* [Dkt. 196] in the Bankruptcy Case.

**WHEREAS**, on or about October 17, 2025, Nexo submitted a Class 1 ballot and a Class 4 ballot, in each case rejecting the Plan and opting out of the third-party releases in the Plan.

**WHEREAS**, on November 5, 2025, the Debtor filed an objection to the SRA Claim [Dkt. 211] (the "Claim Objection"), which Nexo opposed on December 8, 2025 [Dkt. 231].

**WHEREAS**, to avoid protracted litigation, by and through this Agreement, and as a result of settlement negotiations between the Parties, the Parties desire to completely and finally settle and resolve the disputes between them related to the Subscription Agreement, the SRA, the Subscription Agreement Claim, the SRA Claim, the Nexo Shares, the Plan, the Claim Objection, and all other dealings between the Debtor and Nexo (the "<u>Dispute</u>").

## AGREEMENT

1. **<u>Recitals</u>**. The Recitals set forth above are hereby incorporated into this Agreement as if fully set forth herein and constitute an integral part of this Agreement. The Parties agree that the Recitals are accurate and agree that they shall not contest the accuracy of such Recitals in any legal, administrative or other proceeding relating to the Dispute.

2. **<u>SRA Claim</u>**.

    a. Within three (3) business days after the Effective Date, Nexo shall amend the SRA Claim solely to reduce the amount of such claim to $1,000,000 (the "<u>Agreed SRA Claim Amount</u>").

    b. Within three (3) business days after the date Nexo Amends the SRA Claim in accordance with Section 2(a), the Debtor shall withdraw the Claim Objection.

    c. The SRA Claim, in the Agreed SRA Claim Amount, shall be treated as an allowed general unsecured claim pursuant to the Plan.

    d. The Agreed SRA Claim Amount shall not be binding in any proceeding other than the Bankruptcy Case or any adversary proceeding commenced in the Bankruptcy Case. Nexo contends that, for the purposes of any proceeding other than the Bankruptcy Case or any adversary proceeding commenced in the Bankruptcy Case, the Agreed SRA Claim Amount does not fully compensate Nexo for its losses.

3. **<u>Plan Support</u>**.

    a. Within two (2) business days after the Debtor withdraws the Claim Objection, the Debtor shall file an amended waterfall analysis (<u>Exhibit A</u> to the Plan) that includes the SRA Claim in the Agreed SRA Claim Amount in the "General Unsecured Claim" section (the "<u>Amended Waterfall Exhibit</u>"). The Amended Waterfall Exhibit shall supersede and replace the original waterfall exhibit [Dkt. 174-1]. Within three (3) business days after the Debtor withdraws the Claim Objection, Nexo shall withdraw its objection to the Plan, and shall not object to confirmation of the Plan with the Amended Waterfall Exhibit. Nexo shall not object to confirmation of any amended version of the Plan, provided that such amended Plan (i) contains a distribution waterfall with a priority scheme consistent with the Plan, (ii) does not contain releases, exculpations, or injunctions broader than the releases, exculpations, or injunctions in the Plan, and (iii) the waterfall analysis (<u>Exhibit A</u> to the Plan) includes the SRA Claim in the Agreed SRA Claim Amount in the "General Unsecured Claim" section (such amended Plan, the "<u>Amended Plan</u>").

b. Within three (3) business days after the Debtor withdraws the Claim Objection, Nexo shall deliver to the Debtor ballots on account of each of the Subscription Agreement Claim and the SRA Claim (i) opting into the third-party releases in the Plan, and (ii) accepting the Plan. In the event the Debtor resolicits votes on an Amended Plan, Nexo shall timely deliver to the Debtor ballots on account of each of the Subscription Agreement Claim and the SRA Claim (i) opting into the third-party releases in the Plan, and (ii) accepting the Plan.

4. **Court Approval**. The Debtor shall seek Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 through a motion or an Amended Plan. Nexo shall support entry of an order approving the Agreement. The date upon which the order approving this Agreement becomes a final order shall be the "Effective Date."

5. **Debtor Release**. As a material part of the consideration for Nexo entering into this Agreement, the Debtor, on behalf of itself, the Debtor's bankruptcy estate, and each of the Debtor's successors and assigns (collectively, the "Debtor Releasors"), agrees as follows (the "Nexo Release Provision"):

a. Except as to the obligations created by this Agreement, upon the Effective Date, the Debtor Releasors hereby release and forever discharge Nexo, and each of its present and former agents, employees, officers, directors, attorneys, representatives, predecessors, successors, affiliates, and assigns, in each case in its capacity as such (collectively, the "Released Nexo Parties"), from any and all monetary claims, counterclaims, demands, damages, debts, rights to payment, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions, and causes of action of any nature whatsoever, whether arising at law or in equity, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, which the Debtor Releasors may have or claim to have against any of the Released Nexo Parties relating to the Dispute and/or any other amounts owed or claimed to be owed by Nexo to the Debtor on account of acts or omissions prior to the Effective Date (collectively, the "Debtor Claims").

b. For the avoidance of doubt, the Nexo Release Provision is not intended to be, and shall not be construed as, a release of any rights or obligations created by or set forth in this Agreement.

6. **Nexo Release**. As a material part of the consideration for the Debtor entering into this Agreement, Nexo, on behalf of itself and each of its successors and assigns (collectively, the "Nexo Releasors"), agrees as follows (the "Debtor Release Provision"):

a. Except as to the obligations created by this Agreement and as provided in Section 6(c), upon the Effective Date, the Nexo Releasors hereby release and forever discharge the Debtor, the Debtor's bankruptcy estate, and each of their respective present and former agents, employees, officers, directors, members, attorneys, representatives, predecessors, successors, affiliates, and assigns, in each case in their capacity as such (collectively, the "Released Debtor Parties") jointly and severally from any and all monetary claims, counterclaims, demands, damages, debts, rights to payment, agreements, covenants, suits, contracts, obligations, liabilities,

accounts, offsets, rights, actions, and causes of action of any nature whatsoever, whether arising at law or in equity, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, which the Nexo Releasors may have or claim to have against any of the Released Debtor Parties relating to the Dispute and/or any other amounts owed or claimed to be owed by the Debtor or the Debtor's bankruptcy estate on account of acts or omissions prior to the Effective Date (collectively, the "Nexo Claims").

        b.      For the avoidance of doubt, the Debtor Release Provision is not intended to be, and shall not be construed as, a release of (i) any rights or obligations created by or set forth in this Agreement; or (ii) Nexo's rights to receive distributions on account of the SRA Claim, the Subscription Agreement Claim, and the Nexo Shares pursuant to the Plan or any Amended Plan.

        c.      Notwithstanding anything to the contrary in this Agreement, Forrest Gilman shall not constitute a Released Debtor Party.  For the avoidance of doubt, if any provision of the Plan or Amended Plan conflicts with this Section 6(c), this Section 6(c) shall supersede and control.

7.      **Representations and Warranties**.

        a.      The Parties represent that they have each read this Agreement and each is fully aware of and understands all of its terms and legal consequences.

        b.      The Parties have not relied on any representations, promises or agreements other than those expressly set forth in this Agreement.

        c.      The Parties represent that there has not been any assignment, transfer, conveyance, pledge or other disposition of any rights, obligations or liabilities released under the terms of this Agreement, and that there will be no assignment, transfer, pledge or purported assignment or transfer to any person or entity whatsoever, of any claim, debt, liability, demand, obligation, cost, expense, action, defense or cause of action released.

        d.      The Parties represent that they have the authority to enter into this Agreement, that each person executing this Agreement on behalf of a Party is authorized to do so, and that the Parties have obtained the consent of anyone necessary to enter into this Agreement.

8.      **Enforcement and Jurisdiction**.  The Parties agree that the Court shall have exclusive jurisdiction over and be the exclusive venue for any disputes arising under this Agreement.

9.      **No Oral Waiver or Modification**.  No waiver of the terms of this Agreement shall be binding unless made in writing by the Party entitled to the benefit of the waived provision.  No modification of the terms of this Agreement shall be binding unless made in writing and signed by all Parties.

10.     **Notices**.  All notices and other communications required or permitted to be given under this Agreement shall be sent by email.  Such notices and communications will be deemed to

be received on the day they are electronically transmitted. Any notice or other communication related to this Agreement must be addressed to the party representatives identified below. A party may modify or add additional required recipients by providing notice of the additional recipient's name and email address to the party representatives identified below.

<u>If to the Debtor</u>:   Abigail V. O'Brient, Esq.
Covington & Burling LLP
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067
Email: aobrient@cov.com

Bradley T. Hunsicker, Esq.
2120 Carey Avenue
Suite 101
Cheyenne, WY 82001
Email: bhunsicker@markuswilliams.com

<u>If to Nexo</u>:   Ian Shelton, Esq.
Baker & McKenzie LLP
800 Capitol, Suite 2100
Houston, TX 77002
Email: ian.shelton@bakermckenzie.com

Aaron J. Conrardy, Esq.
Wadsworth Garber Warner Conrardy PC
2580 West Main Street
Suite 200
Littleton, CO 80120
Email: aconrardy@wgcw-law.com

11. **<u>Time is of the Essence</u>**. Time is of the essence with respect to each act, payment and performance required by this Agreement.

12. **<u>Drafting</u>**. This Agreement shall not be construed more strictly against one party than the other merely by virtue of the fact that they have been prepared initially by counsel for one of the Parties, it being recognized that each of the Parties and their respective counsel have had a full and fair opportunity to negotiate and review the terms and provisions of this Agreement and to contribute to their substance and form.

13. **<u>Binding on Successors</u>**. This Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto and their successors and assigns, including any bankruptcy trustee.

14. **<u>No Admission</u>**. The Parties acknowledge that this Agreement is entered into for the sole purpose of resolving the Dispute and nothing contained herein shall constitute, is intended

as, or shall be construed to be an admission or evidence of any liability on the part of either of the Parties.

15. **Severability**. In the event any part of this Agreement is deemed unenforceable, the unenforceable provisions will be severed and the remaining provisions shall survive.

16. **Counterparts**. This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. Facsimile, docusigned or emailed "pdf" signatures shall be effective and shall have the same force and effect as original signatures.

17. **Entire Agreement**. This Agreement constitutes the entire agreement made by and between the Parties pertaining to the subject matter hereof, and fully supersedes any and all prior or contemporaneous understandings, representations, warranties, and agreements made by the Parties hereto or their representatives pertaining to the subject matter hereof. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.

[*Signature Page Follows*]

**IN WITNESS HEREOF,** the Parties hereto have executed this Agreement as of the Agreement Date set forth above.

**MODE ELEVEN BANCORP**

By: John Miller
Title: CEO

**NEXO INC.**

By: Kosta Kantchev
Title: Director